UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| RAM VARADARAJAN and CALIFORNIA CRICKET ACADEMY,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA CRICKET ASSOCIATION, INC.,<br><br>Defendant. | Case No.: 12-CV-01306-LHK<br><br>ORDER DENYING PRELIMINARY INJUNCTION |

Before the Court is Plaintiff Ram Varadarajan's ("Mr. Varadarajan") and California Cricket Academy's ("CCA") (collectively "Plaintiffs") motion for a preliminary injunction seeking to enjoin, among other things, Defendant United States Cricket Association, Inc.'s ("USACA" or "Defendant") national election scheduled for April 14, 2012. ECF No. 11 ("Mot."). The Court ordered expedited briefing and held a hearing on the motion on April 12, 2012. Having considered the parties' submissions, arguments, and the relevant case law, the Court DENIES Plaintiffs' motion for the reasons set forth below.

## I. Factual and Procedural Background

The following facts are taken from Plaintiffs' complaint and the declarations in support of the parties' briefs and corresponding exhibits. Unless otherwise noted, these facts are uncontested.

Defendant USACA is a not-for-profit corporation organized and existing under the laws of the State of New York. Compl. ¶ 11, ECF No. 1; USACA Const. Art. I § 3(i), Pearl Decl. Ex. 2.

1

Case No.: 12-CV-01306-LHK
ORDER DENYING PRELIMINARY INJUNCTION

USACA is the governing body of cricket in the United States and an associate member of the International Cricket Council ("the ICC"), the international governing body for the sport of cricket. Compl. ¶ 19; Dainty Decl. ¶ 6; Thickett Decl. ¶ 2. USACA comprises more than 40 cricket leagues dispersed throughout eight regions in the United States.[1] Compl. ¶¶ 19-20; Aaron Decl. ¶ 12. Member leagues in "good standing" and "otherwise eligible to vote" elect a USACA Board of Directors ("USACA Board") comprising thirteen individuals: a president; first vice president; second vice president; executive secretary; treasurer; and a representative from each of the eight regions. Compl. ¶ 20; USACA Const. Art. XXII § 1.

Plaintiff Mr. Varadarajan, a resident and citizen of California, is a cricket enthusiast and a nominee for president of the USACA Board. Compl. ¶¶ 7, 9, 67. Plaintiff CCA, a California not-for-profit corporation with its principal place of business in Cupertino, was, as of November 30, 2011, a full member of the USACA in good standing since July 2008. Compl. ¶¶ 7, 10, 45; Jagannathan Decl. ¶ 11.

The USACA Constitution, which was adopted in January 2008, provides, among other things, the following:

- Each Board member term is limited to three years. USACA Const. Art. XXI § 4.

- Regional elections must be held no later than October 30 of each electoral year. USACA Const. Art. XXI § 6.

- The national election must be held no later than November 30 of each electoral year. USACA Const. Art. XXI § 1.

- Any member league "in good standing, otherwise eligible to vote, is entitled to vote" in elections. USACA Const. Art. XXII § 1.

- A full member league is in "good standing" if that member: (i) owes no outstanding membership dues or other debts to USACA; (ii) has not ceased to be a member; (iii) has not been suspended or expelled from membership, or had no other membership restrictions or sanctions imposed; (iv) has complied with the Constitution, policies, and rules of USACA; (v) is not subject to a disciplinary investigation or action by USACA, or if subject to disciplinary action previously, has fulfilled all terms and conditions of such disciplinary action to the satisfaction of USACA; and (vi) whose

---

[1] The exact number of member leagues is unclear, as the number varies throughout the parties' submission. *See, e.g.*, Compl. ¶ 6 (47 member leagues); *id.* ¶ 14 (48 leagues); Opp'n 3 (41) (citing Dainty Decl. ¶ 14)). The exact number of member leagues is not material to this Court's decision.

2

Case No.: 12-CV-01306-LHK
ORDER DENYING PRELIMINARY INJUNCTION

constitution is not in conflict with the Constitution of USACA. USACA Const. Art. VII § 1.

From April 4, 2011 to July 26, 2011, some regional elections were held, but on September 16, 2011, the Board invalidated these elections. Compl. ¶¶ 4, 26-27, 43; *see also* Aaron Decl. ¶ 13. CCA voted in the Northwest Region election, held on April 19, 2011. Compl. ¶¶ 43, 46.

The national election should have taken place on March 29, 2011, which would have kept the current Board's term at three years. *See* Compl. ¶ 24. On March 30, 2011, however, the Board postponed the national election to October 15, 2011, Aaron Decl. ¶ 9, and later postponed it again to November 30, 2011, the last possible date permitted by Article XXI § 1 of the USACA Constitution. Aaron Decl. ¶ 10; Compl. ¶ 25. The election was postponed a third time to December 21, 2011. Compl. ¶ 43. On September 16, 2011, the Board commenced a "compliance audit" in which the Board required member leagues to submit three years of historical and financial documents to establish that each member league was in good standing and eligible to vote. Compl. ¶¶ 28-35; Athavale Decl. ¶¶ 10-11. The audit was scheduled to end January 29, 2012, and the election was postponed a fourth time to March 17, 2012. Athavale Decl. ¶ 16; Compl. ¶ 37. On February 26, 2012, the Board held a closed meeting, in which the Board found that only 15 member leagues were eligible to vote and decided that 26 member leagues, including CCA, were "noncompliant" and would be barred from voting in the election. Athavale Decl. ¶ 21; Compl. ¶¶ 39-41. After the meeting, the Board announced its "final and binding" decision disenfranchising noncompliant member leagues and again postponed the election to April 14, 2012. Compl. ¶ 40.

The USACA Constitution provides the following provisions regarding questions in connection with the right to vote:

- The board shall appoint an independent auditor who shall "[h]ear and determine all challenges, and questions arising in connection with the right to vote." USACA Const. Art. XXII § 2.

- "Upon request of the person presiding at the meeting or any members entitled to vote thereat or any other legitimate member, the independent auditor shall make a report in writing of any challenge; questions or matters determined by him/her and execute a certificate of any facts found by him/her. Any report or certificate made by the auditor shall be prima facie evidence of the facts stated and of the votes." USACA Const. Art. XXII § 3.

3
Case No.: 12-CV-01306-LHK
ORDER DENYING PRELIMINARY INJUNCTION

The USACA Constitution also provides these provisions relating to dispute resolution more generally:

- A complaint procedure, whereby any member of the USACA may file a complaint with the Board pertaining to any matter within the cognizance of the USACA. USACA Const. Art. XVIII § 1.

- Any member of the USACA agrees to be bound by any decision rendered pursuant to these complaint procedures. USACA Const. Art. XVIII § 2.

- An Appeals Committee consisting of five members shall consider and determine appeals from final decisions rendered by the Board. The decision of the appeals committee is final. USACA Const. Art. XIX § 1.

- "No member, official, league, club, team, player, coach, administrator or umpire may invoke the aid of the courts in the United States or of a State without first exhausting all available remedies listed in this Constitution." USACA Const. Art. XXVIII § 1.

Plaintiffs allege that throughout the process, "Mr. Varadarajan and CCA exhausted every conceivable avenue -- formal and informal -- to convince the USACA Board to abide by the law and hold elections required by the Constitution." Mot. 7;[2] Compl. ¶ 7; *see also* Compl. ¶ 70.

Plaintiffs allege that on December 8, 2011, Mr. Varadarajan sent a letter to the Board asking it to reconsider its decision to postpone elections, but the Board refused. *See* Varadarajan Decl. ¶ 12, Ex. 1; Compl. ¶ 36. On January 1, 2012, Mr. Varadarajan, along with a member league, submitted a complaint to USACA pursuant to Article XVIII of the Constitution. Decl. ¶ 15, Ex. 3; Compl. ¶ 56. The USACA Board refused to consider the grievance and returned the $450 filing fee that had been submitted with the complaint. Decl. ¶ 16; Compl. ¶ 56.

Plaintiffs allege that CCA "promptly provided all materials in response to the Board's audit and frequently checked in for feedback, which the Board failed to provide." *See* Compl. ¶¶ 47-51. The Board found CCA "noncompliant" for failure to have a verifiable membership base of at least eight clubs with a minimum of 15 players each, as required by USACA Const. Art. III § 1. Thicket Decl. ¶ 28. CCA alleges that the Board's finding was erroneous because it confused "the number

---

[2] The page numbers in citations to the parties' briefs refer to the ECF stamp on the top of the document rather than the page number on the bottom of the page.

4

Case No.: 12-CV-01306-LHK
ORDER DENYING PRELIMINARY INJUNCTION

of players on the field with the number of players on an active roster." *See* Compl. ¶ 53. "CCA immediately corrected the Board's mistake, but the Board declined to reconsider, providing no explanation at all." *See* Compl. ¶¶ 53-54, 57-60. CCA and four other member leagues appealed the Board's decision to the Appeals Committee. Opp'n 9 (citing Thickett Decl. ¶¶ 33, 35-36). On April 12, 2012, the parties filed the Appeals Committee's decision affirming the Board's decision to declare CCA and four other member leagues non-compliant. ECF No. 35 Ex. 1.

Plaintiffs allege that the Board's actions surrounding the election violated the USACA Constitution and New York's Not-For-Profit Corporation Law ("N-PCL"). Specifically, Plaintiffs allege that the Board's actions violated Art. IV § 3, Art. VII § 1, Art. VIII § 2, Art. XVIII § 4, Art. XXI § 1, Art. XXI § 4, Art. XXI § 6, Art. XXIV § 1, and Art. XXV § 2 of the USACA Constitution and N-PCL §§ 602, 603, 611, 703. Plaintiffs also allege that the Board's actions violated the unlawful prong of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof Code §§ 17200, *et seq*. Mot. 19.[3]

On March 15, 2012, Plaintiffs filed a complaint seeking declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202. Specifically, Plaintiffs seek: (1) a declaration that the Defendant's actions violated the above-mentioned provisions of the USACA Constitution and N-PCL, Compl. ¶ 78; (2) a declaration that eligible voting members are those members who were in good standing as of November 30, 2011, Compl. ¶ 78; and (3) injunctive relief under the UCL, Compl. ¶ 85.

On March 26, 2012, Plaintiffs filed a motion for a preliminary injunction seeking to: (1) preclude USACA from proceeding with the election on April 14, 2012; (2) enjoin the USACA from nullifying any regional elections held in 2011;[4] (3) direct the USACA to hold the national election no later than May 18, 2012, and to permit full member leagues that were in good standing as of November 30, 2011 to vote; and (4) appoint an independent auditor to circulate ballots, collect, and count the votes, and announce the results. Compl. ¶¶ 91-92.

---

[3] Although the complaint claims relief under both the unlawful and unfair prongs, Compl. ¶¶ 84, 89, Plaintiffs' arguments in their motion are limited to the unlawful prong. *See* Mot. 19.
[4] This requested relief is moot given that the Board appears to have already annulled the regional elections. *See* Compl. ¶ 43 ("September 16, 2011 . . . USACA invalidates all regional elections").

5
Case No.: 12-CV-01306-LHK
ORDER DENYING PRELIMINARY INJUNCTION

## II. Analysis

Before turning to the merits of Plaintiffs' preliminary injunction motion, the Court first addresses the following jurisdictional issues: (1) Mr. Varadarajan's standing under Article III of the U.S. Constitution; (2) CCA's standing to bring claims on behalf of non-party member leagues; and (3) whether the Court has subject matter jurisdiction under 28 U.S.C. §1332.

### A. Article III Standing

USACA argues that Mr. Varadarajan does not have Article III standing. Opp'n 9. Specifically, USACA argues that Mr. Varadarajan: (1) cannot invoke the USACA Constitution because he is not a member of USACA, whose membership is limited to cricket leagues; and (2) lacks Article III standing because his alleged injuries are speculative and are not particularized, concrete, traceable, and redressable. *Id.* at 9, 23, 25. Plaintiffs counter that courts routinely hold that candidates for office, such as Mr. Varadarajan, have Article III standing to bring challenges before and after a contested election. Reply 7, 17. USACA has the better argument.

To establish Article III standing, Plaintiffs must demonstrate that they satisfy three irreducible requirements: (1) they have suffered an "injury in fact," i.e., "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical"; (2) the injury is "fairly traceable to the challenged action of the defendant"; and (3) it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal citations, quotation marks, and alterations omitted); *accord Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000). "[A]t the preliminary injunction stage, a plaintiff must make a 'clear showing' of his injury in fact." *Lopez v. Candaele*, 630 F.3d 775, 785 (9th Cir. 2010), *cert. denied*, 131 S. Ct. 2456 (2011).

A suit brought by a plaintiff without Article III standing is not a "case or controversy," and an Article III federal court therefore lacks subject matter jurisdiction over the suit. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998). In that event, the suit should be dismissed under Federal Rule of Civil Procedure 12(b)(1). *See id.* at 109-10. Moreover, pursuant to Federal Rule of Civil Procedure 12(h)(3), "If the court determines at any time that it lacks subject-matter

jurisdiction, the court must dismiss the action." Therefore, this Court must "assure [itself] that the constitutional standing requirements are satisfied before proceeding to the merits." *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (citing *United States v. Hays*, 515 U.S. 737, 742 (1995)).

The Court agrees with USACA that Mr. Varadarajan has not clearly shown a legally protected interest, the invasion of which is sufficient to confer Article III standing. The right to vote belongs to the member cricket leagues, not to individuals such as Mr. Varadarajan. *See* USACA Const. Art. XXII § 2. Moreover, "[a] non-party to a contract governed by New York law lacks standing to enforce the agreement in the absence of terms that 'clearly evidence[ ] an intent to permit enforcement by the third party' in question." *Premium Mortg. Corp. v. Equifax, Inc.*, 583 F.3d 103, 108 (2d Cir. 2009) (quoting *Fourth Ocean Putnam Corp. v. Interstate Wrecking Co.*, 66 N.Y.2d 38, 45 (1985)). The USACA Constitution, an agreement among member leagues, does not clearly evidence an intent to permit enforcement by candidates for leadership positions. Thus, as a non-member, Mr. Varadarajan lacks standing to enforce the USACA constitution. Moreover, as a non-member, Mr. Varadarajan also does not have an interest protected by New York's Not-For-Profit Corporation Law. *See* N-PCL § 611 ("Any *member* in good standing, otherwise eligible to vote, is entitled to vote at any meeting of *members* . . . .") (emphasis added); *id.* § 618 (providing a right of action to "any *member* aggrieved by an election") (emphasis added). Finally, because Mr. Varadarajan's UCL claim is predicated upon a violation of the USACA constitution and N-PCL, he has no interest protected by the UCL. Thus, Mr. Varadarajan does not have an interest legally protected by the USACA Constitution, N-PCL § 618, or the UCL.

The cases Plaintiffs cite, *Cuva v. U.S. Tennis Ass'n E., Inc.*, 831 N.Y.S.2d 347 (N.Y. Sup. Ct. 2006); *In re Workmen's Ben. Fund*, 38 N.Y.S.2d 429, 431-32 (N.Y. Sup. Ct. 1942); and *Queens Cty. Repub. Comm. ex rel. Maltese v. New York State Bd. of Elec.*, 222 F. Supp. 2d 341, 346 (E.D.N.Y. 2002), are inapposite. None of these cases dealt with Article III standing under the U.S. Constitution. Moreover, these cases are also distinguishable from the instant case on other grounds. *Cuva* stated that "the meaning of the term 'member aggrieved' [under N-PCL § 618] should not be strictly construed" and noted that "courts have held that a person having a right to

7
Case No.: 12-CV-01306-LHK
ORDER DENYING PRELIMINARY INJUNCTION

vote is a person aggrieved and entitled to institute a proceeding pursuant to N–PCL § 618." 831 N.Y.S.2d 347, at *7 (Sup. Ct. 2006). As discussed above, however, Mr. Varadarajan does not have the right to vote. *Cuva* also noted that "a member of a benefit society nominated as a candidate for office has been found to have standing as a party aggrieved within the meaning of the [N–PCL § 618]." *Id.* (citing *In re Workmen's Benefit Fund of U.S.*, 38 N.Y.S. 429). Unlike Mr. Varadarajan, the candidate in *In re Workmen's Benefit Fund of U.S.* was a "member" of the not-for-profit corporation at issue. Finally, *Queens County* dealt with the New York Election Law, another statute not at issue here, which provides in relevant part: "The nomination or designation of any candidate for any public office ... may be contested in a proceeding instituted in the supreme court by any *aggrieved candidate* . . . or by a person who shall have filed objections . . . ." 222 F. Supp. 2d at 347 (citing N.Y. Elec. Law § 16–102(1) (emphasis added). Thus, *Queens County*, which applies to elections for public office does not provide any support for Mr. Varadarajan's claim to Article III standing here.

Mr. Varadarajan lacks Article III standing because he has not clearly shown the invasion of a legally protected interest. Mr. Varadarajan's claims are therefore dismissed pursuant to Rule 12(h)(3). Accordingly, the Court need not address any of the other parties' arguments that pertain specifically to Mr. Varadarajan.

### B. Third Party Standing

Although USACA concedes that CCA has Article III standing for its own claim for relief under the Declaratory Judgment Act, Opp'n 17, USACA argues that the CCA lacks prudential standing to seek any relief on behalf of USACA members who are not before the Court. *Id.* at 9-10, 24 (citing *Warth v. Seldin*, 422 U.S. 490, 499 (1975)). Plaintiffs argue that CCA is not seeking relief on behalf of third parties, but rather is seeking relief for itself, which would have a collateral effect on third parties. Reply 19. The Court agrees with USACA.

"It is a well-established rule that a litigant may assert only his own legal rights and interests and cannot rest a claim to relief on the legal rights or interests of third parties." *Coal. of Clergy, Lawyers, & Professors v. Bush*, 310 F.3d 1153, 1163 (9th Cir. 2002) (citing *Singleton v. Wulff*, 428 U.S. 106, 113-14 (1976); *Warth*, 422 U.S. at 499); *cf. Zepeda v. United States Immigration &*

8
Case No.: 12-CV-01306-LHK
ORDER DENYING PRELIMINARY INJUNCTION

*Naturalization Serv.*, 753 F.2d 719, 727 (9th Cir. 1985) ("A federal court may issue an injunction if it has personal jurisdiction over the parties and subject matter jurisdiction over the claim; it may not attempt to determine the rights of persons not before the court."). The prohibition against third party standing is prudential, rather than constitutional. *Id.* A litigant may bring an action on behalf of third parties if three criteria are satisfied: (1) "[t]he litigant must have suffered an 'injury in fact,' thus giving him or her a 'sufficiently concrete interest' in the outcome of the issue in dispute"; (2) "the litigant must have a close relation to the third party"; and (3) "there must exist some hindrance to the third party's ability to protect his or her own interests." *Coal. of Clergy*, 310 F.3d at 1163 (quoting *Powers v. Ohio*, 499 U.S. 400, 410-11 (1991)). The Court may dismiss a claim for lack of prudential standing. *See Potter v. Hughes*, 546 F.3d 1051, 1055 (9th Cir. 2008); *see Adams v. Luxottica U.S. Holdings Corp.*, No. SA CV 07-1465 AHS, 2009 WL 7401970, at *7 (C.D. Cal. July 24, 2009) (dismissing claim to the extent plaintiffs purported to represent the rights and interests of third parties).

Plaintiffs rely on several election-related cases in support of their argument that Plaintiffs have standing here. Reply 14 (citing *Aprahamian v. HBO & Co.*, 531 A.2d 1204, 1208-09 (Del. Ch. 1987); *Silver v. Farrell*, 450 N.Y.S.2d 938, 942 (N.Y. Sup. Ct. 1982); *Brantley v. Mun. Credit Union*, 879 N.Y.S.2d 395 (N.Y. App. Div. 2009); and *Ocilla Indus. Inc. v. Katz*, 677 F. Supp. 1291, 1301 (E.D.N.Y. 1987)). None of these cases discusses third party standing. Therefore, they provide no support to Plaintiffs.

Plaintiffs seek an injunction granting the right to vote in the national election to 43 USACA member leagues, 42 of which are not parties before this Court. Plaintiffs have not suggested there is, and there does not appear to be, any apparent hindrance to the other members' ability to protect their own interests. Indeed, the declaration of Dr. Ahmad, the President of the Greater Los Angeles Cricket League, a member league that was deemed ineligible to vote, suggests that not all ineligible members want the relief that CCA seeks. Ahmad Decl. ¶ 4 ("I believe that requiring all leagues to comply with USACA's Constitution is long overdue and is necessary for USACA to protect its standing as an Associate member of the International Cricket Council ("ICC")."). Moreover, according to the Thickett Declaration, only five leagues deemed ineligible to vote, including CCA,

9
Case No.: 12-CV-01306-LHK
ORDER DENYING PRELIMINARY INJUNCTION

have submitted appeals.  Thickett Decl. ¶ 33.  In these circumstances, CCA does not have prudential standing to seek an injunction reinstating the right to vote to member leagues not before the Court.  Plaintiffs' claims are therefore dismissed to the extent that Plaintiffs seek to reinstate non-party members' voting rights.

### C. Diversity Jurisdiction Pursuant to 28 U.S.C. § 1332

Plaintiffs' complaint alleges that this Court "has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states and the matter in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs."  Compl. ¶ 12.  Plaintiffs further allege the following:

> Plaintiff CCA has already suffered harm on account of being erroneously labeled "non-compliant" with an administrative audit by USACA.  CCA has devoted thousands of dollars to development, organization, and membership dues, and stands to lose the benefit of its investment if it is no longer considered a league in good standing with USACA.  If the relief sought herein is denied, CCA will suffer additional severe monetary and reputational harm in excess of $75,000.  Because USACA has publicly declared that CCA is a league in "bad standing," CCA will lose players, fans, sponsors, grants, and donations.

*Id.*

Pursuant to 28 U.S.C. § 1332(a)(1), federal district courts have original subject matter jurisdiction in civil actions where there is complete diversity of citizenship among the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.  Although complete diversity of citizenship is not disputed here, the amount in controversy is.  At the hearing, the Court *sua sponte* expressed doubts that the amount in controversy exceeds $75,000. Tr. 13:20-24.  In response, Plaintiffs merely pointed to the fact that "the CCA has paid dues over years, and years and years, the other leagues have paid dues over years and years and years, [and] Mr. Varadarajan has invested significant resources into this election . . . ." Tr. 14:2-10.  Although Plaintiffs contended that "Defendants don't take any issue with our valuation of the claim," Tr. 14:8-10, Defendant at the hearing stated that it "take[s] significant issue with it . . . ." Tr. 14:15-17.

"[T]he amount in controversy is determined from the face of the pleadings."  *Crum v. Circus Circus Enters.*, 231 F.3d 1129, 1131 (9th Cir. 2000).  The amount in controversy alleged by

10
Case No.: 12-CV-01306-LHK
ORDER DENYING PRELIMINARY INJUNCTION

the plaintiff controls so long as the claim is made in "good faith." *Id.* A Court must dismiss a case if it appears "to a legal certainty that the claim is really for less than the jurisdictional amount." *Id.* (internal quotation omitted). "'In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation.'" *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir. 2002) (per curiam) (quoting *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977)). Some courts hold that jurisdiction is lacking where the monetary value of the injunctive relief is "too speculative and immeasurable to satisfy the amount in controversy requirement." *See, e.g.*, *Ericsson GE Mobile Communc'ns Inc. v. Motorola Communc'ns & Elecs., Inc.*, 120 F.3d 216, 221-22 (11th Cir. 1997); *Macken ex rel. Macken v. Jensen*, 333 F.3d 797, 800-01 (7th Cir. 2003) (Easterbrook, J.) (dismissing equitable action where "the monetary value of a controversy cannot be estimated"). The Ninth Circuit does not appear to have expressly endorsed this approach or to have had opportunity to address it.

  *Gonzalez v. Fairgale Properties Co., N.V.*, 241 F. Supp. 2d 512, 518 (D. Md. 2002), is instructive here. In *Gonzalez*, the plaintiff, a shareholder of a corporation, brought an action against the corporation and purchasers of land owned by the corporation. *Id.* at 514. The plaintiff alleged that the corporation was not authorized to sell its land because the sale was not the subject of a shareholders' meeting and was not voted upon, and that the contract for sale was thus unenforceable. *Id.* at 514-15. The plaintiff claimed that she was deprived of her contractual right, as a shareholder, to vote on the sale of the land. *Id.* at 516. The plaintiff sought a declaratory judgment stating that the "Contract of Sale" and "Agreement" were unenforceable instruments. *Id.* at 514-15. The court dismissed the case for lack of subject matter jurisdiction. *See id.* at 518-19. The court reasoned:

> If the declaratory relief sought is granted, any pecuniary loss to [the defendants, the corporation and the purchasers of the land,] is "too speculative and immeasurable to satisfy the amount in controversy requirement." First, it remains possible that the [corporation's] shareholders would authorize the sale of the parcel of lands since it is unclear how [plaintiff] would vote in the transaction. Under those circumstances, the defendants would clearly suffer no pecuniary loss. Second, even assuming that the [corporation's] shareholders vote against the sale of the parcels of land, it is speculative to conclude that the defendants would suffer a pecuniary loss. Although [the purchasers of the land] could bring suit against [the corporation] for breach of

11
Case No.: 12-CV-01306-LHK
ORDER DENYING PRELIMINARY INJUNCTION

contract, there is no evidence that [the purchasers of the land] would be entitled to monetary damages exceeding $75,000.

*Id.* at 518 (internal citation omitted).

Likewise, here, CCA seeks to enforce its contractual right to vote as a member of USACA. It is unclear how denial of an injunction reinstating CCA's right to vote (and the right of all other members deemed ineligible to vote) would cause CCA to lose players, fans, sponsors, grants, and donations. Moreover, the monetary value of this loss is speculative. On this record, the Court has serious doubts as to Plaintiffs' ability to meet the amount in controversy requirement.

The Court declines to dismiss the case at this point because it does not appear "to a legal certainty that the claim is really for less than the jurisdictional amount." *Crum*, 231 F.3d at 1131. This is not to say that upon further briefing and/or factual development on a motion to dismiss or a motion for summary judgment, the Court will necessarily find that it has subject matter jurisdiction. Moreover, the Court "factors in" its serious jurisdictional doubts below when, for purposes of the preliminary injunction motion, it evaluates Plaintiffs' likelihood of success on the merits. *See Frankl v. HTH Corp.*, 650 F.3d 1334, 1356 (9th Cir. 2011) *cert. denied,* 11-622, 2012 WL 986844 (U.S. Mar. 26, 2012); *see also Timbisha Shoshone Tribe v. Salazar*, 697 F. Supp. 2d 1181, 1188 (E.D. Cal. 2010) ("Because [Defendant] raises serious questions as to the Court's subject matter jurisdiction over Plaintiffs' claim, Plaintiffs fail to establish the likelihood of success on the merits of their claims.").

### D. Preliminary Injunction

The issuance of a preliminary injunction is at the discretion of the district court. *Pimentel v. Dreyfus*, 670 F.3d 1096, 1105 (9th Cir. 2012). To obtain a preliminary injunction, a plaintiff generally must show that: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 24-25 (2008); *accord Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1126-27 (9th Cir. 2009).

A preliminary injunction may also be appropriate where the plaintiff shows "'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff . . .

12
Case No.: 12-CV-01306-LHK
ORDER DENYING PRELIMINARY INJUNCTION

so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). "[A]t an irreducible minimum the moving party must demonstrate a fair chance of success on the merits, or questions serious enough to require litigation." *Pimentel*, 670 F.3d 1096, 1111 (9th Cir. 2012).

Under either the *Winter* or *Cottrell* standard, preliminary relief is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. Preliminary relief of the type sought here, which seeks to compel performance of an affirmative act, as opposed to maintaining the status quo, is "particularly disfavored." *Transwestern Pipeline Co. v. 17.19 Acres*, 550 F.3d 770, 776 (9th Cir. 2008) (citing *Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1320 (9th Cir. 1994).

### 1. Choice of Law

As an initial matter, the parties agree that New York law governs Plaintiffs' claim for a declaration that USACA violated the USACA Constitution and the New York Not-For-Profit Corporation Law. Opp'n 11; Reply 11. Indeed, Plaintiffs acknowledge that the Court's interpretation of the USACA Constitution is governed by New York Law. Reply 11.

The parties dispute whether choice of law principles preclude Plaintiffs' UCL claim. Defendants argue that California follows the internal affairs doctrine, "which requires a court to apply the law of the state of incorporation to those things identified as internal affairs of a corporation." Opp'n 17 (quoting *Johnson v. Myers*, 11-CV-00092-JF-PSG, 2011 WL 4533198, at *8 (N.D. Cal. Sept. 30, 2011)). Plaintiffs, on the other hand, argue that "the principle of dépeçage allows the Court to apply New York law to the declaratory judgment claim and California law to the UCL claim." Reply 11.

The Court applies New York law to this dispute. California courts recognize that corporate voting rights disputes, such as the one here, are governed by the law of the state of incorporation. *State Farm Mut. Auto. Ins. Co. v. Superior Court*, 114 Cal. App. 4th 434, 444 (2003) (citing *McDermott Inc. v. Lewis*, 531 A.2d 206, 214–216 (Del. Supr. Ct. 1987)). USACA is incorporated in New York. Accordingly, New York law governs.

13
Case No.: 12-CV-01306-LHK
ORDER DENYING PRELIMINARY INJUNCTION

Plaintiffs' dépeçage argument is unavailing. The applicability of *Dalkilic v. Titan Corp.*, 516 F. Supp. 2d 1177, 1187 n.4 (S.D. Cal. 2007), to this case is unclear. *See In re Factor VIII or IX Concentrate Blood Prods. Liab. Litig.*, MDL 986, 2009 WL 804018, at *5 n.2 (N.D. Ill. Mar. 26, 2009) *aff'd sub nom. Chang v. Baxter Healthcare Corp.*, 599 F.3d 728 (7th Cir. 2010) (noting the complexity of the facts and holding of *Dalkilic*). To the extent *Dalkilic* stands for the proposition that the substantive law of different states can apply to issues in a single case arising out of a common nucleus of operative facts, such proposition makes no difference here. Here, Plaintiffs' UCL claim is predicated upon a violation of the N-PCL. Thus, the issue is the same for the declaratory judgment and the UCL claim: namely, whether the USACA's board's election procedures violated the N-PCL. *See Blanks v. Shaw*, 171 Cal. App. 4th 336, 364 (2009) ("the general rule is that a UCL cause of action borrows the substantive portion of the borrowed statute to prove the 'unlawful' prong of that statute"). As discussed above, New York law governs this issue.

### 2. Likelihood of Success on the Merits

Defendant argues that Plaintiffs are unlikely to succeed on the merits of their declaratory judgment claim because: (1) Plaintiffs seek to bypass the mandatory dispute resolution process contained in the Constitution, Opp'n 21; and (2) N-PCL § 618 only provides a post-election remedy and therefore bars preliminary injunctive relief. Opp'n 19-20, 28. Plaintiffs contend that the USACA constitution is a binding contract, Mot. 15 (citing *Procopio v. Fisher*, 83 A.D.2d 757, 758 (N.Y. App. 1981)), and that Plaintiffs are likely to show that USACA has violated multiple provisions of its own Constitution. Mot. 11. Plaintiffs also argue that CCA is allowed to seek judicial relief when a dispute cannot be resolved through administrative remedies. Reply 26-27 (citing USACA Const. Art. XXVIII § 1). The Court finds that Plaintiffs have failed to show that they are likely to succeed on the merits or even "a fair chance of success on the merits, or questions serious enough to require litigation." *Pimentel*, 670 F.3d at 1111.

### a. Plaintiffs Do Not Appear to Have Exhausted All Remedies Under the USACA Constitution

It is well-settled in New York that a "member of . . . an association . . ., against whom proceedings are instituted under its by-laws, must first exhaust his remedies within the association before he may invoke redress from the courts." *Westheimer v. Commodity Exch., Inc.*, 651 F. Supp. 364, 367 (S.D.N.Y. 1987) (quoting *Moyse v. New York Cotton Exch.,* 128 N.Y.S. 112, 114-15 (N.Y. App. Div. 1911); *see also New York State Soccer Football Ass'n v. United States Soccer Football Ass'n, Inc.*, 9 A.D.2d 963, 963 (N.Y. App. Div. 1959); *New York State Soccer Football Ass'n v. United States Soccer Football Ass'n, Inc.*, 18 Misc. 2d 112, 116 (N.Y. Sup. Ct. 1958) (citing cases). "Where timely and adequate relief is provided for within the framework of an organization, . . . an aggrieved member . . . must first exhaust available administrative remedies before seeking redress from the Court . . . or show that it would be futile to pursue those remedies." *Watkins v. Clark*, 85 Misc. 2d 727, 731-32 (N.Y. Sup. Ct. 1976).

Plaintiffs' acknowledgement that the USACA Constitution is a binding contract bolsters USACA's argument that Plaintiffs must exhaust the remedies provided for in the USACA Constitution before seeking judicial relief. *See* USACA Const. Art. XXVIII § 1. Plaintiffs list a series of alleged violations that occurred months ago. For example, Plaintiffs argue that the Board has remained in office beyond its tenure; unconstitutionally postponed elections; used an "audit" as a pretext to revoke members' voting rights; and never amended the constitution to require audit compliance as a prerequisite to voting rights. Mot. 16-18. However, to be valid, "a complaint must be filed within fourteen (14) days of the occurrence of the alleged violation or grievance." USACA Const. Art. XVIII § 3.vi. There is no evidence that CCA, the only party with Article III standing, ever commenced the dispute resolution process for these grievances within 14 days. The only grievance for which CCA has timely filed a complaint regards the Board's February 26, 2012 finding that CCA was non-compliant and therefore ineligible to vote. On April 11, 2012, just before the hearing on this motion, the parties filed the Appeals Committee's final decision affirming the Board's finding that CCA was ineligible to vote. Thus, the remedies provided by Articles XVIII and XIX of the USACA Constitution appear to have been exhausted.

15

Case No.: 12-CV-01306-LHK
ORDER DENYING PRELIMINARY INJUNCTION

The USACA Constitution also appears to provide another remedy that continues to be available. According to Article XXII § 2, the board shall appoint an independent auditor who shall "[h]ear and determine all challenges, and questions arising in connection with the right to vote." USACA Const. Art. XXII § 2. According to Article XXII § 3, "Upon request of the person presiding at the meeting or any members entitled to vote thereat or *any other legitimate member*, the independent auditor shall make a report in writing of any challenge; questions or matters determined by him/her and execute a certificate of any facts found by him/her. Any report or certificate made by the auditor shall be prima facie evidence of the facts stated and of the votes." USACA Const. Art. XXII § 3 (emphasis added). As a legitimate member, it appears that CCA would have recourse to the remedy of the independent auditor. At the hearing on this motion, Defendant took the position that the independent auditor provided a purely ministerial function, and Plaintiffs initially did not challenge this position. Later in the hearing, Plaintiffs apparently changed positions and requested that the Court appoint an independent auditor to determine members' eligibility to vote. The Court disagrees with Defendant's position that the independent auditor is a purely ministerial position. The plain text of the USACA Constitution vests dispute resolution powers in the independent auditor over "questions arising in connection with the right to vote." Thus, there appears to be a remedy under the USACA Constitution yet to be exhausted. Failure to exhaust would bar all of Plaintiffs' claims here.

### b. Post-Election Remedy Appears to Be Exclusive Remedy Under New York Law

Moreover, even if administrative remedies were now exhausted, and CCA were now free to seek a judicial remedy for its allegedly unconstitutional disenfranchisement, N-PCL § 618 would likely bar CCA's claim anyway. N-PCL § 618 provides:

> Upon the petition of any member aggrieved by an election and upon notice to the persons declared elected thereat, the corporation and such other persons as the court may direct, the supreme court at a special term held within the judicial district where the office of the corporation is located shall forthwith hear the proofs and allegations of the parties, and confirm the election, order a new election, or take such other action as justice may require.

16
Case No.: 12-CV-01306-LHK
ORDER DENYING PRELIMINARY INJUNCTION

There appears to be a split of authority as to whether this remedy is the exclusive remedy for members of a not-for-profit corporation challenging election procedures. On the one hand, the general rule appears to be that this statute permits only a post-election remedy to members of a New York not-for-profit corporation who claim they were aggrieved by an election. *See Rosen v. Lebewohl*, 28 Misc. 3d 1226(A) (N.Y. Sup. Ct. 2010) (pursuant to N-PCL § 618, a court "lacks the authority, absent a stipulation between the parties, to act in advance of an election to determine qualifications of voters"). However, there appears to be a narrow exception under the general business statutes that allows for "an application for injunction against use of proxies allegedly obtained by defendants through fraud in connection with an election of directors." N-PCL § 618, Annotation 13; *see also Segal v. Bresnick*, 222 N.Y.S.2d 768, 769 (N.Y. Sup. Ct. 1952). Although the scope of this exception is unclear, Plaintiffs' claims do not appear to fall within its scope. Thus, the Court cannot say that Plaintiffs have clearly shown a likelihood of success on the merits. In any event, it appears that because Plaintiffs have not clearly exhausted their remedies under the USACA Constitution, CCA is limited to seeking only post-election remedies under N-PCL § 618.

In summary, the Court has serious questions as to its subject matter jurisdiction, it appears that Plaintiffs may not have exhausted all of their administrative remedies, and New York law appears to limit Plaintiffs to post-election remedies. Given these facts, Plaintiffs have not clearly shown a likelihood of success on the merits, nor have they shown "a fair chance of success on the merits, or questions serious enough to require litigation." *Pimentel*, 670 F.3d at 1111 (9th Cir. 2012). "Having so concluded, [the Court] need not consider the three remaining preliminary injunction factors." *Advertise.com, Inc. v. AOL Adver., Inc.*, 616 F.3d 974, 982 (9th Cir. 2010).[5]

---

[5] Nevertheless, the Court finds that Plaintiffs also fail to clearly show that they are likely to suffer irreparable harm because the availability of a post-election remedy at law under N-PCL § 618 precludes a finding that Plaintiffs are likely to suffer irreparable harm in the absence of an injunction. *See Blanksteen v. New York Mercantile Exch.*, 879 F. Supp. 363, 367 (S.D.N.Y. 1995).

17
Case No.: 12-CV-01306-LHK
ORDER DENYING PRELIMINARY INJUNCTION

### III. Conclusion

For the foregoing reasons, Plaintiffs' motion for a preliminary injunction is DENIED. Mr. Varadarajan's claims are DISMISSED for lack of Article III standing, and CCA's claims are DISMISSED to the extent that they seek to reinstate non-party members' voting rights, for lack of third party standing.

**IT IS SO ORDERED.**

Dated: April 13, 2012

_____
LUCY H. KOH
United States District Judge

18
Case No.: 12-CV-01306-LHK
ORDER DENYING PRELIMINARY INJUNCTION